IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JUAN C. RIVERA-PEDROGO,<br><br>Plaintiff,<br><br>      v.<br><br>DR. FERNANDO L. VILLAMIL-WISCOVITCH,<br><br>Defendant. | CIVIL NO. 22-1039 (CVR) |

## OPINION AND ORDER

### INTRODUCTION

Plaintiff Juan C. Rivera-Pedrogo ("Plaintiff") brings forth this medical malpractice claim against defendant Dr. Fernando L. Villamil-Wiscovitch ("Defendant") based on diversity jurisdiction.  (Docket No. 1).  Before the Court now is Defendant's Motion to Dismiss ("Motion to Dismiss") where he alleges the Court lacks subject matter jurisdiction to hear the claim under Federal Rule of Civil Procedure 12(b)(1).  (Docket No. 35).

For the reasons stated below, the Court finds that diversity jurisdiction is present. Accordingly, Defendant's Motion to Dismiss is DENIED.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an industrial engineer, who led an active lifestyle from a young age. (Docket No. 1, at p. 2).  He participated in a wide variety of sports and athletic competitions, including the Ironman Triathlon.  Id.  In 2017, Plaintiff started experiencing "severe lower back pain that rendered it impossible for him to continue running and participating in triathlon competitions. . . ." (Docket No. 1, at p. 3).  Per his coworkers' recommendations, Plaintiff visited Defendant's office for an evaluation.  Id.

Defendant, an orthopedic surgeon specializing in the spine, evaluated Plaintiff and referred him to an anesthesiologist, who treated Plaintiff for approximately three months using blockage therapy.  Id.  These treatments proved unsuccessful at easing his pain, so Defendant ultimately recommended that Plaintiff undergo surgery, which was scheduled for November 8, 2018.  (Docket No. 1, at pp. 3-4).  "Following the surgical procedure, [P]laintiff awoke with intense lower back pain and multiple neurologic deficits in the right lower extremity including a dense foot drop, which defendant doctor attributed to a [sic] intraoperative finding that complicated the proposed surgery, which prompted him to perform additional procedures."  Id. at p. 4.  Plaintiff started physical therapy immediately after his surgery, but his condition did not improve.  Id. at p. 5.  "Desperate [from] his persistent pain, atrophy, and profound weakness of the right lower extremity, . . . [Plaintiff] sought and underwent a revision procedure with Dr. Yamil Rivera-Colón [on] November 2019"; but, like before, Plaintiff's pain did not improve.  Id.

On January 24, 2022, Plaintiff filed the present suit in federal court, alleging *inter alia* that "Defendant Dr. Fernando Villamil's surgery deviated from the standard of care in multiple ways regarding his treatment of [Plaintiff], thus incurring in gross negligence and medical malpractice." (Docket No. 1, at p. 6).  Defendant answered the Complaint on January 28, 2022, and subsequently filed a Motion to Dismiss for lack of subject matter jurisdiction on January 25, 2023.  (Docket Nos. 10 and 35, respectively).  Defendant claims dismissal is warranted because, although he is a resident of Oklahoma, his domicile is in Puerto Rico.  (Docket No. 35, at p. 2).  Thus, since both parties are domiciled in Puerto Rico, diversity jurisdiction is lacking and the Court should, consequently, dismiss the Complaint.  Id.

Plaintiff opposed dismissal on February 22, 2023, arguing that diversity was present at the time of filing the Complaint and remains as such because Defendant's true domicile is Oklahoma.  (Docket No. 41, at p. 2).  To this end, Plaintiff provides a myriad of evidence that,[1] in his view, demonstrates Defendant "was domiciled in Oklahoma long before the date of the filing of [the] complaint and still is."  Id.

On March 14, 2023, Defendant replied to Plaintiff's Opposition reiterating that, despite his current residence and Plaintiff's alleged "selective and anticipated biased interpretation of the facts and documents", "neither at present nor certainly at the time of the filing of this action did he have the intention of establishing his domicile in Oklahoma."  (Docket No. 58, at pp. 2-3).

## LEGAL STANDARD

It is well recognized that "'[f]ederal courts are courts of limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case.'"  Roselló-González v. Calderón-Serra, 398 F.3d 1, 15 (1st Cir. 2004) (citing Bonas v. Town of North Smithfield, 265 F.3d 69, 73 (1st Cir. 2001)).  See also Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994) ("Federal courts are courts of limited jurisdiction.").  As such, "[t]hey possess only that power authorized by Constitution and statute, [. . .] which is not to be expanded by judicial decree."  Kokkonen, 511 U.S. at 377 (citation omitted).  Accordingly, the First Circuit Court of Appeals has consistently held that "'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'"  Murphy v. U.S., 45 F.3d 520, 522 (1st Cir. 1993) (citing

---

[1] Plaintiff filed a total of twenty-seven (27) exhibits, which the Court will discuss in more detail further on in the Opinion. (Docket No. 41, Exhibits 1-27).

Taber Partners, I. v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)); see also Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992); Spielman v. Genzyme Corp., 251 F3d 1, 6 (1st Cir. 2001).

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"),[2] "[t]he district court must construe the Complaint liberally and treat all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs." Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998) (citing Royal v. Leading Edge Prods., Inc., 833 F.2d 1, 1 (1st Cir. 1987)); Murphy, 45 F.3d at 522 (citing K.W. Thompson Tool Co. v. United States, 836 F.2d 721, 726 (1st Cir. 1988)).   "A party, however, may not rest merely on 'unsupported conclusions or interpretations of law.'" Murphy, 45 F.3d at 522 (citing Washington Legal Found. V. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir. 1993)).   "'[S]ubjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts' will not defeat a motion to dismiss." Id.  (citing Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992)) (emphasis omitted).

Furthermore, in a diversity action, Rule 12(b)(1) allows "a party [to] contest the court's subject matter jurisdiction by challenging the allegations in the complaint as insufficient on their face or by questioning the accuracy of those allegations." Hernández-Santiago v. Ecolab, Inc., 397 F.3d 30, 34 (1st Cir. 2005) (citing Valentín v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001)).  This means that "[w]here a party challenges the accuracy of the pleaded jurisdictional facts, the court may conduct a broad inquiry, taking

---

[2] Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may present a motion to dismiss a case for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).

evidence and making findings of fact." Id.  Thus, in cases such as this, where the defendant's domicile presents a jurisdictional issue, "it [is] appropriate for the district court to [accept] evidence (including affidavits) and [make] factual rulings based on the evidence before it." Id.[3]

## LEGAL ANALYSIS

### A. Applicable Law.

28 U.S.C.A. § 1332(a)(1) provides the district court with original jurisdiction over all civil cases between citizens of different states and where the amount in controversy exceeds $75,000.00. 28 U.S.C.A. § 1332(a)(1). "In a diversity action where there is no question of ripeness, mootness, or standing, the existence *vel non* of subject matter jurisdiction typically turns on two facts, to wit, diversity of citizenship and amount in controversy." Hernández-Santiago, 397 F.3d at 33 (citing Valentín, 254 F.3d at 362-63).

Diversity requires a party to be a "citizen of the state in which he is domiciled." Padilla-Mangual v. Pavía Hosp., 516 F.3d 29, 31 (1st Cir. 2008) (citing Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991) and other cases); Aponte-Dávila v. Municipality of Caguas, 828 F.3d 40, 46 (1st Cir. 2016). [4]  It is "'the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" Meléndez-García v. Sánchez, 629 F.3d 25, 41 (1st Cir. 2010) (citing Padilla-Mangual, 516 F.3d at 31).

---

[3] See also Merlonghi v. U.S., 620 F.3d 50, 54 (1st Cir. 2010) ("The district court may also 'consider whatever evidence has been submitted, such as depositions and exhibits submitted.'" (citing Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996)).

[4] See also García Pérez v. Santaella, 364 F.3d 348, 350 (1st Cir. 2004) ("Citizenship is determined by domicile, which can be established by demonstrating that the individual is physically present in the state and has an intent to remain indefinitely." (citing Lundquist, 946 F.2d at 10; Sun Printing & Publ'g Ass'n v. Edwards, 194 U.S. 377, 383, 24 S.Ct. 696 (1904); Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir. 1979)).

As such, diversity jurisdiction is determined at the time of the filing of the Complaint and once established, a subsequent change in domicile will not defeat the existence of diversity.  Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 49 (1st Cir. 1992) (citing Lundquist, 946 F.2d at 10; Valedón Martínez v. Hospital Presbiteriano de la Comunidad, Inc., 806 F.2d 1128, 1132 (1st Cir. 1986); Hawes, 598 F.2d at 701).  See also García Pérez, 364 F.3d at 350-51 ("The key point of inquiry is whether diversity of citizenship existed at the time the suit was filed; subsequent events may bear on the sincerity of a professed intention to remain but are not part of the primary calculus." (citing Hawes, 598 F.2d at 700; Miranda v. Miranda, 686 F.Supp. 44, 47 (D.P.R. 1988)).

Now, "[w]hen a defendant challenges the court's jurisdiction based on lack of diversity, 'the party invoking subject matter jurisdiction . . . has the burden of proving by a preponderance of the evidence the facts supporting jurisdiction.'"  Meléndez-García, 629 F.3d at 40 (citing Padilla-Mangual, 516 F.3d at 31, and cases quoted therein).  To prove domicile a party must demonstrate: "(1) 'physical presence in a place,' and (2) 'the intent to make that place one's home.'"  Aponte-Dávila, 828 F.3d at 46 (citing Valentín, 254 F.3d at 366).  To say that domicile and residence are the same is, therefore, inapposite. Id.

Regarding intent, the First Circuit has consistently used the following factors to determine a party's domicile: "the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment." Meléndez-García, 629 F.3d at 41 (citing Padilla-Mangual, 516 F.3d at 32).  The number of ties a person has with a

place, as well as the significance of those ties, must be analyzed when deciding where a person is domiciled.  See Aponte-Dávila, 828 F.3d at 47 (citing García-Pérez, 364 F.3d at 351).  Furthermore, "'[w]hile no single factor is controlling, some courts have presumed domicile in a state is established where a party is registered to vote.'"  Id.  Although the First Circuit "has not recognized such a presumption, [it has] said that the place a person is registered to vote is a 'weighty' factor in determining domicile." Padilla-Mangual, 516 F.3d at 32 (citing Lundquist, 946 F.2d at 12).

**B. Discussion.**

As previously mentioned, Defendant alleges the Court lacks subject-matter jurisdiction because, while he is a resident of Oklahoma, he was domiciled in Puerto Rico at the time of filing the Complaint and remains so to this date.  (Docket No. 35).  Plaintiff argues, however, that Defendant's true domicile, both currently and as of the date the Complaint was filed, is Oklahoma.  (Docket No. 41).  Defendant avers that the Plaintiffs' interpretation of the exhibits is erroneous, yet he does not contest their veracity. Defendant also failed to submit any documentary evidence in support of his Motion to Dismiss, other than an unsworn statement alleging his intent to remain domiciled in the island.  Therefore, upon examining the parties' submissions, the Court agrees with Plaintiff.

It is uncontested from the filings on record that Defendant had various ties to the state of Oklahoma, at the time of the filing of the complaint, which continue to this day. For example: (1) he obtained his medical license in Oklahoma in 2018; (2) he surrendered his Puerto Rico driver's license and obtained a valid Oklahoma driver's license; (3) he has a thriving medical practice and corporation named Scuderia Spinale, PLLC, in Jenks,

Oklahoma, for which he pays approximately $2,860.00 in monthly rent; (4) he has medical privileges at the CORE hospital in Tulsa, Oklahoma; (5) he has business accounts in an Oklahoma bank; (6) he pays income and property taxes in Oklahoma; and (7) he registered to vote, and effectively voted, in the 2020 presidential elections. More significant ties to Oklahoma include: (1) the luxury cars both he and his wife own and use in Oklahoma; (2) the six-bedroom home he owns in Jenks, Oklahoma, valued at over one million dollars ($1,000,000.00), for which he pays a substantial monthly mortgage of $5,851.00, plus over $21,000.00 in annual property taxes; (3) the over $500.00 in utilities he pays monthly for said home; and (4) his wife's career as a reporter for Telemundo Denver. (Docket Nos. 35 and 41, Exhibits 2, 3, 5, 8, 9, 11, 15, 17-22, 24, and 25).

Conversely, Defendant's ties in Puerto Rico consist of: (1) a practice located at an office space in San Juan, Puerto Rico, that he rents from a fellow colleague for one dollar ($1.00) a year; (2) medical privileges at Ashford Hospital in San Juan, Puerto Rico; (3) social and familial ties in Puerto Rico; (4) a Puerto Rico postal address; (5) a Puerto Rico phone number; (6) an apartment in the Condado area in San Juan; (7) a 2006 Jeep Wrangler that he uses when he visits the island; (8) property and income taxes he files as a Puerto Rico resident; among a few other ties. (Docket Nos. 35 and 41, Exhibits 2, 3, 5-7, 9-12, 14, 15, 21, and 24).

At first glance, it may seem that Defendant's domicile possibly remains in Puerto Rico. However, the details and comparison of Defendant's ties to both places convince the Court that his true domicile is in Oklahoma.

<u>Juan C. Rivera Pedrogo v. Dr. Fernando L. Villamil Wiscovitch</u>
Opinion and Order
Civil No. 22-1039 (CVR)
Page 9

For instance, Defendant claims he moved to Oklahoma for business opportunities, but insists that his domicile and principal place of business is and remains in Puerto Rico. He also alleges that surrendering his Puerto Rico driver's license and acquiring an Oklahoma license was done for the same reasons. Nonetheless, from the exhibits attached to Plaintiff's Opposition,[5] it is clear that Defendant spends more time doing business in Oklahoma than he does in the island. For example, the exhibits show that he has conducted almost twice as many surgeries in Oklahoma than he has in Puerto Rico since 2019. Defendant also lists his Oklahoma medical practice as his main business address on his webpage.

Moreover, Defendant fails to mention that, as part of his Chapter 11 Bankruptcy Reorganization Plan currently underway in Puerto Rico, the Condado apartment Defendant claims as his main home is part of the Bankruptcy estate to settle his debts. In the same vein, the two luxury cars he leased in Puerto Rico were also repossessed shortly after purchasing those he currently owns in Oklahoma. The only car he currently owns in Puerto Rico is a 2006 Jeep Wrangler. On the other hand, and despite the occasional visits to the island, Defendant spends most of his personal time in his 6-bedroom Oklahoma mansion with his wife and pets. The electrical bill consumption exhibits show that Defendant consumed way over twice the amount of electricity in his Oklahoma home than he did in his Condado apartment during the time surrounding the filing of the Complaint. The bank statements, provided as part of Plaintiff's exhibits, likewise show that the bulk of the transaction activity is in Oklahoma and neighboring states, whereas transactions

---

[5] <u>See</u> Docket No. 41, Exhibits 1-27.

done in Puerto Rico are fewer and farther between. Furthermore, because Defendant was living in Oklahoma at the time, he chose to both register and vote in the last presidential elections in that state, yet he did not vote in Puerto Rico.[6]

As Plaintiff contends in his opposition, Defendant's numerous ties to Oklahoma far outweigh what remaining ties he has in Puerto Rico.  Defendant seemingly urges the Court to take his "verified and uncontested statement" as the "ultimate evidence" of his intent to have Puerto Rico be his true domicile but provides no other documentary evidence to support his position.   However, this Court has previously held that "'[s]tatements of intent are accorded minimal weight [when] measured against [other] objective factors.'"   Padilla-Mangual v. Pavia Hosp., 640 F.Supp. 2d 128, 137 (D.P.R. 2009) (Besosa, J.) (citing Alicea-Rivera v. SIMED, 12 F.Supp.2d 243, 246 (D.P.R. 1993)). Hence, Defendant's steadfast conviction, without more, cannot be taken merely on blind faith.

In sum, Plaintiff has demonstrated by a preponderance of the evidence, that Defendant is indeed domiciled in Oklahoma, therefore proving that diversity jurisdiction exists.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is DENIED.  (Docket No. 35).

---

[6] The Court recognizes that the COVID-19 Pandemic restrictions made travel almost impossible during 2020, on an international level. However, Defendant had the option of voting in the Puerto Rico elections via mail-in ballots, for example.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 21st day of March 2023.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES DISTRICT JUDGE